**N.R., INC., d.b.a. Sunset Inn, Appellant,**

**v.**

**OHIO LIQUOR CONTROL COMMISSION, Appellee.**

[Cite as *N.R., Inc. v. Ohio Liquor Control Comm.* (1996), 113 Ohio App.3d 198.]

No. 17630.

Court of Appeals of Ohio,
Ninth District, Summit County.

Decided July 31, 1996.

' *Jerry G. Roubenes*, for appellant.

*Betty D. Montgomery*, Attorney General and *David A. Raber*, Assistant Attorney General, for appellee.

BAIRD, Presiding Judge.

Defendant-appellant, N.R., Inc., appeals the order of the Common Pleas Court of Summit County affirming the decision of the Ohio Liquor Control Commission ("commission") revoking appellant's liquor permit. We affirm.

Appellant, an Ohio corporation d.b.a. Sunset Inn, holds a D–1–2–3–3A liquor permit, allowing it to sell beer, wine and liquor until 2:30 a.m. on weekdays. On January 27, 1994, at approximately 2:45 a.m., a police officer for the city of Norton peered in the window of the Sunset Inn, saw a number of people with beverages in front of them, and saw what he believed to be beer being served.

The commission issued a notice of violation to appellant, charging appellant with (1) hindering and/or obstructing an inspector or officer from making an inspection of permit premises, in violation of R.C. 4301.66; and (2) allowing the delivery of beer on permit premises between the hours of 2:30 a.m. and 5:30 a.m.,

in violation of Ohio Adm.Code 4301:1–1–49.[1]  Following a hearing before the commission, appellant was found to have violated both R.C. 4301.66 and Ohio Adm.Code 4301:1–1–49.  As a result, the commission revoked appellant's liquor permit.

Appellant appealed the commission's decision to the common pleas court, which affirmed the commission.  Appellant then filed a timely appeal to this court, asserting two assignments of error.

## I

In its first assignment of error, appellant contends that the trial court erred in not finding that the commission had abused its discretion when the evidence supporting the commission's decision was not reliable, probative and substantial. Appellant maintains that there was a complete absence of proof establishing the elements of the offenses, that the commission's decision was against the manifest weight of the evidence, and that the decision to revoke appellant's permit was unreasonable, arbitrary and capricious.

## A

### Standard of Review

Appeals of commission decisions to the court of common pleas are governed by R.C. 119.12.  When reviewing an order of an administrative agency pursuant to R.C. 119.12, a common pleas court acts in a "limited appellate capacity."  *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 343, 587 N.E.2d 835, 838–839.

"[I]n an appeal from the Board of Liquor Control to the Court of Common Pleas * * *, that court must give consideration to the entire record before the Board of Liquor Control, including all evidence offered before the board, and such additional evidence as the court may admit, and must appraise all such evidence as to the credibility of witnesses, the probative character of the evidence and the weight to be given it, and, if from such a consideration it finds that the board's order is not supported by reliable, probative and substantial evidence and is not in accordance with law, the court is authorized to reverse, vacate, or modify the order of the board."  *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 58 O.O. 51, 131 N.E.2d 390, paragraph one of the syllabus;  see, also,

---

1. Appellant was initially charged with delivering beer between the hours of 1:00 a.m. and 5:30 a.m.  The charge was amended by the commission, without objection by appellant, at the hearing conducted in this matter.

*Diversified Benefit Plans Agency, Inc. v. Duryee* (1995), 101 Ohio App.3d 495, 499, 655 N.E.2d 1353, 1355–1356.

The common pleas court must give due deference to the administrative resolution of evidentiary conflicts and must not substitute its judgment for that of the administrative agency. *Hawkins v. Marion Corr. Inst.* (1990), 62 Ohio App.3d 863, 870, 577 N.E.2d 720, 724, citing *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267–1268.

█ An appellate court's review of the trial court's decision is even more limited and requires the appellate court "to determine only if the trial court has abused its discretion, *i.e.,* being not merely an error of judgment, but perversity of will, passion, prejudice, partiality or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 750–751.

B

Obstructing an Inspection of Permit Premises

█ John Dalessandro, a uniformed patrolman for the city of Norton, testified at the commission hearing that, for several weeks prior to January 27, 1994, he and other officers had noticed numerous vehicles in the parking lot of the Sunset Inn after hours. On January 27, at approximately 2:45 a.m., he noticed approximately seven cars in the lot.

Officer Dalessandro approached the door of the Sunset Inn, found it locked, but looked inside through the windows on the front door. He testified as follows:

"OFFICER DALESSANDRO: I looked in and I saw about seven customers around the bar with beverages sitting in front of them, and I observed Mr. Gheith [the manager] here pour a mug of beer or what appeared to be a mug of beer.

"COUNSEL: And would you describe the mug? I mean, what color was the liquid that was put into it?

"OFFICER DALESSANDRO: It was a lime green or—I don't know what you call it—yellowish.

"COUNSEL: Did it have some type of a foam on it?

"OFFICER DALESSANDRO: Yes, it did. It did have a head on it.

"COUNSEL: And in your experience as a police officer, based on your observations, would you conclude that that appeared to be a beer?

"OFFICER DALESSANDRO: Yes, it was."

Following these observations, Officer Dalessandro stated that he knocked on the door, identified himself as a police officer, and advised Gheith to open the door. Officer Dalessandro was in full uniform. Gheith, who had approached the

door from the bar area, stood in front of the doorway, and told Officer Dalessandro to wait because he had to unlock the door. Officer Dalessandro testified that he could hear Gheith "yelling in a foreign language."

Following this exchange, Officer Dalessandro, who had been joined by other officers, observed a couple of people around the bar stand up and pour their drinks out. He believed "they were throwing them into a trash can." Three to four minutes later, Gheith opened the door and explained that the door was difficult to open because it had several locks and bolts on it. After entering the bar, Officer Dalessandro talked to several people who refused to give him any information as to who had poured out beer. Officer Dalessandro stated that "[t]here was no evidence. So we left the bar."

Gheith testified that at approximately 3:00 a.m. on January 27, when the bar was closed, an officer knocked on the door of the Sunset Inn. Gheith stated that at that time he and about four other persons were filling the coolers at the bar. The officer told Gheith that he had seen a glass of beer in the bar.

Bernard Archer and Hani Faris, both of whom were at the bar on January 27, testified that the officers became irritated because the door was not opened immediately upon their order. Archer stated that there were four locks on the door and that it took approximately five minutes to open the door. Faris stated that it took three or four minutes to open the door. Both Archer and Faris testified that they never saw a drink at any time after 2:30 a.m. Archer stated that the bar was dark, except for lights immediately above the bar. Both Archer and Faris believed it would be difficult to see the contents of items on the bar from the door, which was twenty feet away.

At the time of the incidents in questions, R.C. 4301.66 [2] provided:

"No person shall hinder or obstruct any agent or employee of the department of liquor control, or any officer of the law, from making inspection or search of any place, other than a bona fide private residence, where beer or intoxicating liquor is possessed, kept, sold, or given away."

Appellant maintains that the evidence before the commission did not constitute substantial evidence of an overt act of hindrance or obstruction sufficient to establish a violation of R.C. 4301.66. Appellant relies on *State v. Brown* (App.1960), 85 Ohio Law Abs. 85, 89, 170 N.E.2d 854, wherein the proprietor smashed to the ground a bottle of beer intended as evidence of a sale to a minor, and *United Ancient Order of Druids, Columbus Grove No. 10 v. Bd. of Liquor Control* (App.1960), 84 Ohio Law Abs. 461, 462, 172 N.E.2d 18, wherein the proprietor pulled the premises door shut and refused to open it for a liquor investigator.

---

2. R.C. 4301.66 was amended, effective October 29, 1995.

As a preliminary matter, we note that *State v. Brown* did not decide the issue of whether the evidence of obstruction presented was sufficient; it determined only that the act in question was part of the "res gestae" of the offense whether or not the agents had technically completed their inspection and search of the permit premises. *State v. Brown*, 85 Ohio Law Abs. at 89–90, 170 N.E.2d at 857–858. However, even considering *Brown* for the purpose of establishing sufficiency, the evidence in the case *sub judice* comports with the evidence found in both *Brown* and in *United Ancient Order of Druids* to establish a violation of R.C. 4301.66.

The record demonstrates that several minutes passed before Gheith opened the Sunset Inn's door to admit the officers. During that time, Officer Dalessandro observed several people pouring out what he believed to be beer. A "delaying argument" of three to five minutes from the time officers knocked on a door and identified themselves to the time the door was opened to permit an inspection has been held to be sufficient, even in a criminal prosecution, to establish a violation of R.C. 4301.66. *State v. Compher* (Mar. 19, 1986), Ross App. No. 1160, unreported, 1986 WL 3406. Simple refusals by employees of a permit holder to identify themselves and to allow inspection of the premises' liquor permit have been found to be sufficient evidence of a hindered investigation. *Cleveland v. Stokes* (June 21, 1990), Cuyahoga App. No. 56629, unreported, 1990 WL 84251.

Appellant also relies on *Ashford v. Bd. of Liquor Control* (C.P.1954), 69 Ohio Law Abs. 193, 195, 54 O.O. 80, 81, 121 N.E.2d 164, 166, for the proposition that "a simple assault" is required before a violation of R.C. 4301.66 can occur. We do not find the reasoning of the Franklin County Common Pleas Court in *Ashford* to be sound and decline to adopt it. Moreover, we note that even the Franklin County Court of Appeals has determined that *Ashford* is not binding authority on a court of appeals and has not been followed by other jurisdictions. *Sermon v. Ohio Liquor Control Comm.* (July 20, 1995), Franklin App. No. 95APE01–18, unreported, 1995 WL 431129.

Accordingly, we find that there was sufficient reliable, probative, and substantial evidence before the commission to support its finding that appellant had obstructed an investigation, in violation of R.C. 4301.66, and that the trial court did not abuse its discretion in affirming the commission's decision.

## C

### Delivery of Alcohol after Prescribed Hours

■ Appellant also argues that there was insufficient evidence to support the commission's finding that appellant had delivered beer after 2:30 a.m. on a weekday as prohibited by the terms of its liquor permit.

Ohio Adm.Code 4301:1-1-49 provides:

"No beer or intoxicating liquor shall be sold, delivered, or be permitted to be consumed on weekdays on the premises of a D-3A * * * permit holder between the hours of two thirty a.m. and five thirty a.m.[.]"

Appellant again relies on *Ashford, supra,* to support its belief that there was insufficient evidence that appellant had "delivered" beer. Appellant maintains that there must be physical evidence of beer to establish that beer, in fact, was served after 2:30 a.m.

*Ashford,* as a trial court opinion, is not binding authority upon this court. *Sermon v. Ohio Liquor Control Comm., supra.* Moreover, there is no requirement that only direct evidence can support the finding of a violation of a commission regulation. *Dato, Inc. v. Ohio Liquor Control Comm.* (Dec. 31, 1980), Hamilton App. No. C-790791, unreported. The elements of an offense can be established by circumstantial evidence. *State v. Nicely* (1988), 39 Ohio St.3d 147, 154-155, 529 N.E.2d 1236, 1242-1243; *State v. Shue* (1994), 97 Ohio App.3d 459, 466, 646 N.E.2d 1156, 1160.

Officer Dalessandro testified that, after 2:45 a.m., he observed seven customers of the Sunset Inn seated around the bar with beverages in front of them; he observed Gheith pour a lime green or yellowish beverage with "a head on it" that, based on his experience as a police officer, appeared to be a mug of beer. He also observed a couple of people "stand up and pour their drinks out."

Although Bernard Archer and Hani Faris denied seeing any drinks after 2:30 a.m., resolving conflicts in evidence and assessing the credibility of witnesses are primarily for the trier of fact. *Id.,* 97 Ohio App.3d at 466, 646 N.E.2d at 1160. Because Officer Dalessandro's testimony provided reliable, probative, and substantial evidence that beer was served after 2:30 a.m., the trial court did not abuse its discretion in affirming the commission's order finding that appellant had violated Ohio Adm.Code 4301:1-1-49.

D

Revocation of Liquor Permit

In the final portion of appellant's first assignment of error, it argues that since there was no reliable, probative and substantial evidence of the offenses charged, the commission's decision to revoke appellant's liquor permit was arbitrary, capricious, unreasonable, and manifestly against the weight of the evidence.

Since we have determined that there was reliable, probative and substantial evidence of both offenses with which appellant was charged, this portion of appellant's first assignment of error is without merit.

Appellant's first assignment of error is overruled.

## II

In its second assignment of error, appellant maintains that (1) the commission's decision to revoke its liquor permit was based upon racial and ethnic discrimination in violation of the Due Process Clause of the United States Constitution, and (2) the trial court erred in failing to conduct an evidentiary hearing on this issue.

In its brief to the common pleas court, filed as part of its appeal of the commission's decision, appellant stated that its sole shareholder is Naji Rizk, a naturalized citizen of the United States of Arab ancestry. Appellant argued, without providing any support, that the only time the commission had revoked a holder's liquor permit for "minor offenses" was when the holder was of Arab descent. Appellant also claimed that Hani Faris had attempted at the hearing to "state to the Commission the police officer's apparent bias to the Arabs in the premises and was cut off short by the Commission." Appellant requested a hearing "to present evidence of ethnic prejudice and opportunity to have adequate discovery to establish [its] claim including depositions and interrogatories of the decisions and findings of the Liquor Control Commission against Arab permit holders."

The trial court found that the commission had not cut short the testimony of Hani Faris and that evidence of ethnic prejudice did not constitute newly discovered evidence for purposes of R.C. 119.12.

A trial court is not required to conduct an oral hearing in considering an appeal of an administrative order. *Motor Vehicle Dealers Bd. v. Cent. Cadillac Co.* (1984), 14 Ohio St.3d 64, 67, 14 OBR 456, 459, 471 N.E.2d 488, 491–492. R.C. 119.12 states:

"Unless otherwise provided by law, in the hearing of the appeal, the court is confined to the record as certified to it by the agency. Unless otherwise provided by law, the court *may grant a request for the admission of additional evidence when satisfied that such additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency.*

"The court shall conduct a hearing on such appeal * * *. The hearing in the court of common pleas shall proceed as in the trial of a civil action, and the court shall determine the rights of the parties in accordance with the laws applicable to such action. At such hearing, counsel may be heard on oral argument, briefs may be submitted, and evidence introduced *if the court has granted a request for the presentation of additional evidence.*" (Emphasis added.)

In accordance with R.C. 119.12, the court may limit the hearing to a review of the administrative record. The trial court may, in its discretion, accept briefs, permit oral argument, and/or admit newly discovered evidence. *Motor Vehicle*

*Dealers Bd. v. Cent. Cadillac Co.,* 14 Ohio St.3d at 67, 14 OBR at 459, 471 N.E.2d at 491–492. An appeal pursuant to R.C. 119.12 does not, however, contemplate a trial *de novo* in the court of common pleas. *Andrews v. Bd. of Liquor Control,* 164 Ohio St. at 279, 58 O.O. at 53, 131 N.E.2d at 393.

In accordance with the plain language of R.C. 119.12, the court of common pleas may grant a request for the admission of additional evidence only when it is satisfied that such evidence is newly discovered and could not have been discovered with reasonable diligence prior to the hearing. Because it is within the trial court's discretion to permit additional evidence, this court may reverse the determination of the common pleas court only upon a finding that the court abused its discretion. *Pons,* 66 Ohio St.3d at 621, 614 N.E.2d at 750–751.

Appellant offered nothing in its brief to the trial court, nor does it offer anything to this court, to substantiate its allegations that the commission's decision to revoke its liquor permit was founded on ethnic prejudice. Appellant argues that the commission revokes only the permits of Arab Americans upon violations which constitute "minor offenses"; however, it does not provide any support for its allegation. Accordingly, appellant offered no "newly discovered evidence" that the trial court, in its discretion, might have admitted.

Moreover, with respect to appellant's claim that Faris offered evidence of ethnic discrimination to the commission but was "cut off short," the record belies this claim. Upon cross-examination of Faris, the following colloquy occurred:

"COUNSEL: Okay. I also believe you made the statement that the officer was asking too many questions; is that right?

"FARIS: Not too many questions. He was asking me and my friend because maybe we not American or something. He kept on asking what we doing in there.

"COUNSEL: But I believe you made the statement on the record that the officer was asking too many questions.

"FARIS: I didn't mean it that way. It's like asking me too many questions and my cousin—he kept on insisting why we took a long time to open that door. That's all I remember.

"COUNSEL: That's all the questions I have.

"CHAIRMAN: Do you have any questions?

"COMMISSIONER: No questions.

"CHAIRMAN: Do you have any more questions?

"GHEITH: No.

"CHAIRMAN: Call your next witness.

"GHEITH: That's it.  * * *"

As the trial court correctly concluded, Faris was not cut off by the commission regarding this aspect of his testimony.

In light of the foregoing, we do not find that the trial court abused its discretion in failing to conduct an oral hearing or in permitting the admission of "newly discovered evidence."  Appellant's unsupported allegations do not constitute *evidence,* newly discovered or otherwise.

Appellant's second assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

REECE and EDWARD J. MAHONEY, JJ., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.