CHLYSTA, Appellant,

v.

**OHIO STATE DENTAL BOARD, Appellee.**

[Cite as *Chlysta v. Ohio State Dental Bd.,* 174 Ohio App.3d 465, 2007-Ohio-7112.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2006–P–0107.

Decided Dec. 28, 2007.

466

Hammond, Sewards & Williams, and James M. McGovern, for appellant.

Marc Dann, Attorney General, and Jonathan Fulkerson, Assistant Attorney General, for appellee.

———————

JUDITH A. CHRISTLEY, Judge.

{¶ 1} Appellant, Mary Ann Chlysta, DDS, appeals from a judgment entry of the Portage County Common Pleas Court under R.C. 119. That court upheld the decision of the Ohio State Dental Board ("the board") denying Chlysta's application for reinstatement of her license to practice dentistry in Ohio. For the reasons indicated herein, we affirm the judgment entry of the trial court.

{¶ 2} The record shows that in 1974, Chlysta underwent extensive surgeries for temporomandibular joint ("TMJ") problems. Severe complications have caused her chronic pain, for which she has been treated by numerous physicians. Her treatment has included controlled-substance medications. There is no issue of illegal or illicit usage or of bogus symptoms.

{¶ 3} Chlysta was licensed as a dentist in Ohio and engaged in the active practice of dentistry during the years 1976 through 1998. In 1985, the issue of drug dependency came to the attention of the board, and Chlysta agreed that she was chemically dependent. She further agreed that she would be supervised and drug-screened by Shepard Hill Hospital in order to recover from her chemical dependency. To that end, she entered into a consent agreement and received treatment for chemical dependency between 1985 and 1989.

{¶ 4} In 1997, Chlysta again agreed that she was dependent on narcotics. She was issued a notice regarding her dependency, and in 1998, a board hearing was commenced to adjudicate her fitness to practice dentistry. During the pendency of that hearing, she entered into a Voluntary Retirement Agreement ("VRA").

{¶ 5} In lieu of a possible disciplinary decision to revoke her license, she and the board agreed in the VRA that she would surrender her license unless and until she could demonstrate that she was not drug dependent, that she was not using drugs to excess, and that she could practice dentistry according to the standards of her profession.

{¶ 6} In 2004, Chlysta applied to the board for reinstatement of her license. The board denied her application for reinstatement and notified her of her right to a hearing on the matter. Chlysta requested a hearing, which commenced before a hearing examiner on February 1, 2005. The hearing examiner recommended that her application for reinstatement be denied. The board accepted the recommendation of the hearing examiner on the basis that she did not comply with the VRA nor with the provisions of R.C. 4715.30(A)(8).

{¶ 7} R.C. 4715.30(A)(8) provides that a person who holds a license under Chapter 47 of the Ohio Revised Code, including a dental license, is subject to disciplinary action for "[i]nability to practice under accepted standards of the profession because of physical or mental disability, dependence on alcohol or other drugs, or excessive use of alcohol or other drugs."

{¶ 8} Notwithstanding the board's reference to R.C. 4715.30(A)(8), the proceeding before the board in February 2005 was not a disciplinary hearing, inasmuch as no disciplinary charges had been brought against her at that time. Rather, it was an application for reinstatement based upon her alleged compliance with the VRA. Accordingly, our analysis will disregard the board's statement that the provisions of R.C. 4715.30(A)(8) were relevant to the board's adjudication.

{¶ 9} It was agreed by the board and the parties in that hearing, and it follows, that in order to have her license reinstated, the only issue to be adjudicated was whether Chlysta had satisfied the requirements of the 1998 VRA. The hearing examiner stated:

{¶ 10} "[T]he Board intends to confine its evidence, arguments and rationale at the hearing to whether [Chlysta] has met the terms of reinstatement of her license contained in paragraph (B) of the Voluntary Retirement Agreement."

{¶ 11} Paragraph (B) of the VRA recited as follows:

{¶ 12} "Dr. Chlysta shall ensure that a written report is provided to the Board by a treating practitioner, acceptable to the Board, indicating that Dr. Chlysta is no longer drug dependent and is able to practice dentistry in accordance with the accepted standards of the profession, and/or that Dr. Chlysta is not excessively using drugs and is able to practice dentistry in accordance with the accepted standards of the profession. This evaluation shall be in writing and shall state with particularity the basis for such determination."

{¶ 13} At that time, Chlysta did not object to the scope of the hearing as defined by the hearing examiner.

{¶ 14} Chlysta subsequently appealed the adverse decision of the board to the Portage County Common Pleas Court. A magistrate reviewed the matter based upon the record of the board, additional evidence in written form, as permitted by the magistrate, and the briefs of the parties. A combined magistrate's decision and journal entry was issued, in which the magistrate found that "the Board's decision is supported by reliable, probative, and substantial evidence and is in accordance with law." The magistrate's decision and journal entry stated that she would not be reversing the decision of the board and that the parties could file objections to her decision. Chlysta filed objections to the magistrate's decision and journal entry.

{¶ 15} The trial court's judgment entry overruled the objections of Chlysta, adopted the magistrate's decision as its own, and affirmed the board's decision to deny reinstatement of Chlysta's license to her.

{¶ 16} Chlysta has timely appealed this matter to this court and has raised the following seven assignments of error:

{¶ 17} "[1.] The trial court erred in affirming the Dental Board Order, given that the Board failed to define key terms in the VRA and given that the overwhelming evidence at the Board hearing demonstrated that: 1) Dr. Chlysta is neither 'drug dependent' nor 'excessively using drugs,' when reasonable definition [sic] are applied to those terms; and 2) Dr. Chlysta is able to practice dentistry in accordance with accepted standards of the profession.

{¶ 18} "[2.] The trial court erred in affirming the Board Order, given that the Board disregarded the favorable results of the evaluation directly contemplated by the terms of the VRA to assess Dr. Chlysta's physical limitations and drug regimen.

{¶ 19} "[3.] The trial court erred in affirming the Board Order, given that the Board disregarded endorsements by experts of its choosing regarding the favorable results of the evaluation directly contemplated by the VRA.

{¶ 20} "[4.] The trial court erred in affirming the Board Order, given that the Board relied upon the duplicative and flawed testimony of its experts instead of honoring the terms of the VRA.

{¶ 21} "[5.] The trial court erred in affirming the Board Order, given that it was a violation of Dr. Chlysta's due process rights for the Board to make findings of fact/conclusions of law that were outside the scope of the hearing (as both outlined in the Notice of Opportunity for Hearing and confirmed in the Hearing Examiner's pre-hearing decision).

{¶ 22} "[6.] The trial court erred in affirming the Board Order, given that the Board's failure to grant Dr. Chlysta's Motion to strike the 'State's Memorandum Regarding Dr. Chlysta's Objections to the Hearing Examiner's Report', filed October 12, 2005, tainted the Hearing Record and allowed the state an unfair advantage in the hearing process.

{¶ 23} "[7.] Assuming arguendo that the Board viewed Dr. Chlysta as a recovering drug addict in 1985, 1998 or 2005, the trial court erred in affirming the Board order given that the Board's Order violated the Americans with Disabilities Act by discriminating against her."

{¶ 24} We accept the board's argument that the issue of the applicability of the Americans with Disabilities Act has been waived because it was not raised at the board hearing or in the trial court and the express terms of that act

do not apply to Chlysta's circumstances. This dispenses with the seventh assignment of error. We therefore conclude that the seventh assignment of error is without merit.

{¶ 25} The other six assignments of error challenge the board's consideration of evidentiary matters presented to the board at the hearing that commenced on February 1, 2005. These assignments of error will be considered together, because they all touch on the trial court's conclusion that the board's order was supported by reliable, probative, and substantial evidence.

{¶ 26} As a general proposition, the procedure for an administrative appeal of a decision of a state agency or board is governed by R.C. 119.12. That statute expressly states that the common pleas court should affirm the board's ruling if the court's review of the evidence shows that the decision was "supported by reliable, probative, and substantial evidence and [was] in accordance with law." Under the foregoing standard, a common pleas court must engage in a hybrid form of review. That is, while the common pleas court is obligated to weigh the evidence and consider the credibility of the witnesses, it still must show due deference to the board's "credibility" determination. See *Selekman v. Bd. of Mahoning Cty. Commrs.* (Mar. 5, 1996), 7th Dist. No. 95 C.A. 107, 1996 WL 99816, *1–2.

{¶ 27} In turn, an appellate court reviews the decision of the common pleas court for an abuse of discretion. *Lomaz v. Ohio Dept. of Commerce, Div. of State Fire Marshal,* 11th Dist. Nos. 2004–P–0071 and 2004–P–0072, 2005-Ohio-7052, 2005 WL 3610440, at ¶ 20. Under this standard of review, we cannot reverse the common pleas court's decision if it contains a mere error in judgment; instead, a reversal can occur only when the lower court's ruling was based upon a "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 28} At this point in our analysis, it will be helpful to frame the questions that were before the board's hearing examiner for consideration. The questions are two: (1) as of the date of the hearing (February 1, 2005), did Chlysta demonstrate that she was not drug dependent and excessively using drugs and (2) was she able to practice dentistry within the standards of the profession? These questions are based upon the scope of the hearing as defined by the hearing examiner.

{¶ 29} The bulk of the February 2005 hearing focused on the phrases "drug dependent" and "excessively using drugs." A lesser portion of the hearing focused on whether she was able to practice dentistry in 2005.

{¶ 30} Our review of the record concludes that Chlysta's strategy at the board hearing was to pierce the veil of paragraph (B) of the VRA, having to do with

drug dependency and excessive use of drugs. If that could be done, Chlysta apparently felt that there would be an affirmative answer to the second question posed above, that she was able to practice dentistry in 2005. In essence, Chlysta sought to parse the phrases "drug dependent" and "excessive use of drugs" at the board hearing in such a way that the board would be moved to distinguish between "physical dependency" and "chemical dependency." The strategy presumed that if the board were to agree with Chlysta's approach to the meaning of those terms, the board would construe the evidence presented to find that she was not "drug dependent" or "excessively using drugs."

{¶ 31} Her strategy did not work, because the board found that the word "dependency" was to be given its common, generic meaning. Chlysta argues in this court that the hearing examiner and board incorrectly ruled on this point. We disagree. While the word "dependent" can be modified to reflect a specific kind of dependency, in the VRA the parties chose *not* to modify it. Unmodified, it has a common and broad-based definition. That alone does not make it ambiguous.

{¶ 32} By her own admission, Chlysta was physically dependent on her drug regimen in the same way that asthmatics, diabetics, and coffee drinkers are physically dependent on their drugs. She argues, however, that testimony and evidence presented in her case-in-chief at the board hearing required the conclusion that she was not chemically dependent and that she could practice dentistry in accordance with the standards of her profession. On the contrary, the board argues, she consumed an "extraordinary and remarkable dose" of drugs on a daily basis and is "likely chemically dependent on her medications."

{¶ 33} The problem Chlysta had with her strategy to pierce the veil of the VRA was summed up by Dr. Beckwith, a member of the board, who stated as follows:

{¶ 34} "I understand the reasoning why there's an attempt to slice thinner and thinner and thinner the notion of dependency to modify it with words like chemical, physical, what else, emotional, anything you want. *But the word dependency always persists.* And so the [report and recommendation of the hearing examiner] says that you are indeed dependent, and we looked at the evidence and agreed that that's true, *that is a true statement.*" (Emphasis added).

{¶ 35} Our review of the record as a whole indicates that *if the question of whether Chlysta was able to practice dentistry were considered in isolation, apart from the VRA, there was some evidence that she was able to practice dentistry.* This is borne out by the letters from the following experts: Dr. Karaffa (Oct. 17, 2001 letter), Dr. Bowermaster (Oct. 17, 2001 letter), Dr. Hedberg (Nov. 9, 2001 and April 25, 2003 letters), and Dr. Whitney (Sept. 23, 2002 letter); as well as the

testimony of Dr. Jones, Ms. Judith Evans, and Dr. Chevlen (as well as his letter dated Jan. 10, 2005). Further, the board's experts (Dr. Pratt and Dr. Parran) presented no evidence that Chlysta suffered from cognitive or motor deficits that would impair her ability to practice dentistry. However, as stated above, in order to arrive at this second question, Chlysta was required to pierce the veil of the 1998 VRA, and this she failed to do.

{¶ 36} As was noted above, in reviewing the evidence presented to a state board, the common pleas court must show due deference to the board's resolution of any evidentiary conflict. *Selekman*, 1996 WL 99816, *1–2. Such deference is considered necessary because the board is in the best position to observe the demeanor of all witnesses and assess their credibility. See *Sutton v. Ohio State Bd. of Pharmacy* (Apr. 30, 2002), 11th Dist. Nos. 2001–T–0030, 2001–T–0031, and 2001–T–0032, 2002 WL 819059, *5. Applying this principle to the instant matter, this court concludes that the record of the board proceeding contained sufficient, credible evidence to support the trial court's decision to uphold the board's finding as to whether Chlysta was drug dependent or excessively using drugs.

{¶ 37} Accordingly, we cannot say that the trial court abused its discretion in finding that the board's decision was based upon reliable, probative, and substantive evidence and was in accordance with the law. Accordingly, in light of our limited standard of review, we will not disturb the judgment of the trial court. See *Lomaz v. Ohio Dept. of Commerce, Div. of State Fire Marshal*, 2005-Ohio-7052, 2005 WL 3610440, at ¶ 20.

{¶ 38} We conclude that assignments of error one through six are without merit.

{¶ 39} The judgment of the trial court is affirmed.

Judgment affirmed.

TRAPP and DONOFRIO, JJ., concur.

DONOFRIO, J., of the Seventh Appellate District, sitting by assignment.